IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LEADIS TECHNOLOGY, INC. SECURITIES LITIGATION _____/ This Document Relates To: ALL ACTIONS _____/ | No. C 05-00882 CRB  **MEMORANDUM AND ORDER** |

    This is a securities class action alleging claims under section 11, 12(b)(2) and 15 of the Securities Act of 1933 ("Securities Act"). Plaintiffs principally allege that they purchased stock from Leadis's initial public offering ("IPO") and that Leadis's IPO Prospectus contained materially false and misleading statements and omitted material facts necessary to avoid making misleading statements. Plaintiffs also contend that all defendants, including the underwriters, are liable under section 12(b)(2) as "direct sellers" of the security, and that the individual officers of the company are liable as controlling individuals of the company under section 15. Now pending before the Court are motions to dismiss pursuant to Rule 12(b)(6) filed by the Leadis defendants and the Underwriter defendants. After carefully considering the parties' moving papers, and with the benefit of an extensive oral argument, the motions to dismiss are hereby GRANTED.

**BACKGROUND**

**I.   Factual Background**

Leadis Technology is a Delaware corporation with its principal place of business in Sunnyvale, California. Formed in 2000, Leadis designs, develops and markets semiconductors called "display drivers." Leadis's main products consisted of two types of display drivers, commonly referred to as LCD drivers and the more technologically advanced OLED drivers. Its customers were module manufacturers, who incorporated the display drivers with other components to create display modules, or displays, which are used for wireless handsets. Leadis's customers sell their products as components to wireless handset manufacturers, including industry giants such as LG Electronics, Nokia, and Samsung Electronics.

Leadis began to commercially ship its drivers in the third quarter of 2002 and immediately began to see positive growth. By the time of its June 16, 2004, IPO, Leadis had posted six consecutive profitable quarters. Its two primary customers were Philips Mobile Display System ("Philips") and Samsung OLED, which accounted for 75.9 percent and 23.4 percent of Leadis's revenue, respectively, in 2003. On June 16, 2004, Leadis issued 6,000,000 shares of stock through a firm underwritten commitment from several underwriters, including Goldman, Sachs & Co., Merrill Lynch, Thomas Weisel Partners, and Needham & Co., who are also defendants to this action. Leadis completed a Registration Statement on Form S-1 on March 24, 2004, and later amended it on April 30, May 20, and June 16. It also filed a prospectus with the SEC on June 16, 2003 pursuant to Rule 424(b). The IPO price was $14.00.

On July 28, 2004, Leadis announced that its revenues increased for a seventh consecutive quarter in the second quarter of 2004. On October 21, 2004, it announced that its revenues for the third quarter decreased marginally. In addition, Leadis announced that it expected revenues to decline in the fourth quarter because of increased pricing pressures and a slowdown in demand for OLED products, even though demand for its LCD products would remain healthy. On October 22, 2004, Leadis's common stock fell from $16.94 to $8.79, a

decrease of 48 percent. On January 10, 2005, Leadis's stock price fell 8.37 percent after the company announced it was not comfortable with predicted revenues for the first quarter of 2005. On March 25, 2005, Leadis revealed that Philips and Samsung OLED accounted for 52.3 percent and 36.7 percent of its revenue in 2004, respectively.

At issue in this action is whether Leadis's IPO Prospectus was materially false or misleading as it pertained to price pressures and demand in the industry and its continued relationship with its customers, particularly Samsung OLED.

## II. Procedural History

This action was filed on March 2, 2005. On June 10, 2005, the Court appointed Ngoan Van Le, Richard Beedenbender and Scott Strouse ("Le Group") as named plaintiffs. On August 8, plaintiffs filed a Consolidated Class Action Complaint ("Complaint") against all defendants. In addition to the corporation, the Leadis defendants include individual defendants Sung Tae "Steve" Ahn, Victor Lee, Keunmyung "Ken" Lee, Lip-Bu Tan, Kenneth Goldman, and Arati Prabhakar. The Leadis defendants and the Underwriter defendants listed above filed this motion to dismiss on October 28, 2005. The Court held an oral argument on February 24, 2006.

## LEGAL STANDARDS

### I. Motion to Dismiss

The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. Gilligan v. Jamco Develop. Corp., 108 F. 3d 246, 249 (9th Cir. 1997). Under Rule 12(b)(6), a complaint should not be dismissed unless a plaintiff can prove "no set of facts in support of his claim that would entitle him to relief." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). The court must take the non-moving party's factual allegations as true and must construe those allegations in the light most favorable to the non-moving party. See id. "Dismissal can be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). However, "conclusory allegations of law

3

and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Washington Energy Co., 83 F.3d 1136, 1139 (9th Cir. 1996).

## II.  Section 11 of the Securities Act

Section 11 of the Securities Act creates a private remedy for any purchaser of a newly issued security if any part of the prospectus "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77(k).  The plaintiff in a section 11 claim must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that omission or misrepresentation was material and would have misled a reasonable investor about the nature of his or her investment.  In re Daou Systems, Inc. Secs. Litig., 411 F.3d 1006, 1027 (9th Cir. 2005) (citing In re Stac Electronics Secs. Litig., 89 F.3d 1399, 1403-1404 (9th Cir. 1996) (citations omitted)).  "No scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions." Id. (citing Herman & MacLean v. Huddleston, 458 U.S. 375, 382 (1983)).

## III.  Section 12(a)(2) of the Securities Act

Pursuant to section 12(b)(2), a person who offers or sells a security by means of a prospectus containing a false statement of material fact or omitting a material fact is liable to the person purchasing the security from him.  15 U.S.C. § 77l(a)(2).  Liability under section 12(b)(2) requires (1) passing title of the security to a plaintiff, or (2) soliciting the purchase, motivated in part by the defendant's own financial interest.  Pinter v. Dahl, 468 U.S. 622, 647-648 (1988).

## IV.  Section 15 of the Securities Act

Section 15(a) imposes joint and several liablity upon every person who controls any person liable under sections 11 or 12.  15 U.S.C. § 77o; see also In re Daou, 411 F.3d at 1029.  Violation of section 15 is therefore predicated upon a violation of section 11 or 12.

//

//

**DISCUSSION**

**I.    Proper Pleading Standard**

As a threshold matter, the Court must determine whether the liberal pleading standard of Rule 8(a) or the heightened standard of Rule 9(b) applies to this action. Defendants contend that the Complaint is "grounded in fraud" and should therefore be held to the heightened standard of Rule 9(b). See Stac, 89 F.3d at 1405. Plaintiffs argue that the Complaint alleges a true section 11 claim not grounded in fraud which merely requires the Court to apply the liberal pleading standard of Rule 8(a).

**A.    Legal Standard**

Although section 11 does not require a plaintiff to allege or prove fraud, a plaintiff may nonetheless be subject to Rule 9(b)'s heightened pleading standard if the gravamen of the complaint is based in fraud. See In re Daou, 411 F.3d at 1027; see also Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004) (holding that the wording of Rule 9(b) "is cast in terms of the conduct, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action"). The Ninth Circuit has determined that a complaint "sounds in fraud" or is "grounded in fraud" if the plaintiff alleges a "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of the claim." Id. (quoting Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103-1104 (9th Cir. 2003)). "In a case where fraud is not an essential element of a claim, only allegations of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)." Id.

**B.    Analysis**

Plaintiffs' Complaint does not include allegations of fraud or any other terms or phrases generally associated with fraud, such as "intentional," "knowing," or "purposeful." In fact, the Complaint very carefully attempts to outline only a negligence claim of strict liability under section 11. Yet the inquiry here is not whether plaintiffs' allegations, on their face, allege fraud or negligence; rather, to determine whether Rule 9(b) applies, the Court must determine whether the allegations are "predicated on fraud." Rombach, 355 F.3d at 171.

5

Although the Complaint includes 121 paragraphs with many sub-paragraphs, plaintiffs' counsel acknowledged at oral argument that the crux of the allegations is that the cautionary warnings included in the Prospectus pertaining to (1) defendants' relationship with Samsung Electronics and its affiliate, Samsung OLED, and (2) to pricing pressures on Leadis's OLED drivers were already occurring at the time of the IPO. In other words, the Complaint alleges that Leadis had *already* encountered reduced OLED driver orders from its customer, Samsung OLED, in light of competition from its competitor, Samsung Electronics, and sales prices for Leadis's OLED drivers had *already* decreased due to pricing pressures in the broader OLED industry. Because the Prospectus merely warned of the possibility or likelihood that these two developments would happen in the future, plaintiffs contend that the failure to disclose that these events were already occurring constituted an omission of a material fact that resulted in a misleading Prospectus.

At the time of the IPO, Leadis had 67 employees, manufactured two products, and had two customers. If plaintiffs' theory of liability is taken as true, as the Court is required to do under a Rule 12(b)(6) motion to dismiss, it is implausible that defendants would not have known about the falsity of the representations or omissions.[1] In fact, the alleged material misrepresentations and omissions were not–and could not have been–a result of a failure to exercise reasonable care. Cf. In re DDi Corp. Secs. Litig., 2005 WL 3090882 at *10 (C.D. Cal. 2005) ("Each of the defendants owed to the purchasers of DDI stock ... the duty to make a reasonable and diligent investigation of the statements contained in the ... Prospectus."). Rather, the true factual basis for plaintiffs' claims is that defendants knew that the cautionary warnings regarding Samsung and the OLED driver price decreases were already happening at the time of the IPO yet failed to disclose that information in the Prospectus. This is a quintessential fraud claim. Despite plaintiffs' best efforts to mask this reality and merely plead a negligence claim, their allegations necessarily depend on defendants' knowledge of

---

[1] This is particularly true with regard to Leadis's relationship with the two Samsung entities since Leadis does not have a duty to investigate and disclose non-public information about a customer and competitor. As a result, the only information Leadis would have been obligated to disclose would have been information its officers knew at the time of the IPO.

6

United States District Court
For the Northern District of California

these on-going occurrences and their decision to mislead investors by making the disclosures in forward-looking–rather than present-tense–statements.  To be sure, sections 11 and 12(b)(2) do not require plaintiffs to prove defendants' knowledge of these material omissions or their intent to mislead by failing to disclose this information.  Nonetheless, that does not change the fact that these allegations, regardless of how they are facially pled in the Complaint, are "grounded in fraud."  Moreover, because the theory of the Complaint hinges on these omissions, the claims are therefore predicated on a "unified course of fraudulent conduct."  See In re Daou, 411 F.3d at 1027.  Accordingly, the Court finds that the heightened pleading standard of Rule 9(b) must apply to this action in its entirety.

This determination is supported by the purpose of the heightened pleading standard of Rule 9(b).  As the Ninth Circuit has explained, Rule 9(b) "deter[s] the filing of complaints 'as a pretext for the discovery of unknown wrongs.'"  In re Stac, 89 F.3d at 1405 (quoting Semegen v. Weidner, 780 F.3d 727, 731 (9th Cir. 1985)).  Where, as here, the allegations of negligent conduct are grounded in a fraud-based theory of liability, a plaintiff shall not be permitted to circumvent the requirements of Rule 9(b) merely by avoiding express mention in the Complaint of the unavoidable reality of the fraudulent nature of the claims.  See id. (noting that the "same policy considerations apply to Section 11 claims sounding in fraud").

### III.   Application of Rule 9(b) to Sections 11 and 12(a)(2)[2]

The Court's analysis would ordinarily now engage in an evaluation of Complaint to determine if it satisfies the heightened pleading standard of Rule 9(b).  Yet that analysis is unnecessary here because plaintiffs conceded in open court that the current Complaint does not meet the standard of particularity for averments of fraud.  See In re Stac, 89 F.3d at 1404 (quoting In re GlenFed, Inc. Secs. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) ("The plaintiff must set forth what is false or misleading about a statement [or omission], and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.").  Moreover, plaintiffs' counsel further conceded at

---

[2] Although most of the discussion *supra* concerns section 11, it is equally applicable to section 12(a)(2), because it pertains to the requirement of both that the prospectus contain a false statement of material fact or omit a material fact.

oral argument that, if given leave to amend, plaintiffs still would not be able to meet the particularity requirements of Rule 9(b).[3] This admission therefore ends the Court's inquiry.

## CONCLUSION

This is a classic fraud case masquerading as a negligence claim. While plaintiffs need not prove fraud, the gravamen of the Complaint is nevertheless "grounded in fraud." Thus, the heightened pleading standard of Rule 9(b) applies. Plaintiffs have admitted the Complaint fails to meet the particularity requirements of Rule 9(b), and the Court agrees. Since plaintiffs have further represented to the Court that an amendment to the Complaint would be futile, defendants' motions to dismiss are GRANTED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: March 1, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[3] Since plaintiffs' section 15 claim is predicated on liability under sections 11 or 12, the Court includes the section 15 claim into this analysis.