1   Robert S. Green (State Bar No. 136183)
    **GREEN WELLING LLP**
2   595 Market Street, Suite 2750
    San Francisco, CA  94105
3   Telephone:  (415) 477-6700
    Facsimile:   (415) 477 6710
4   Email:  cand.uscourts@classcounsel.com

5   *Liaison Counsel for Plaintiffs and the Class*

6   Andrew L. Zivitz (*Admitted pro hac vice*)
    Christopher L. Nelson
7   Michelle M. Newcomer (*Admitted pro hac vice*)
    **BARROWAY TOPAZ KESSLER**
8   **MELTZER & CHECK, LLP**
    280 King of Prussia Road
9   Radnor, PA  19087
    Telephone:  (610) 667-7706
10  Facsimile:   (610) 667-7056

11  *Lead Counsel for Plaintiffs and the Class*

12

13                  **UNITED STATES DISTRICT COURT**

14              **NORTHERN DISTRICT OF CALIFORNIA**

15

16
    In re LEADIS TECHNOLOGY, INC.          Master File No. C-05-0882-CRB
17  SECURITIES LITIGATION

18  _____       **PLAINTIFFS' NOTICE OF MOTION,**
                                           **MOTION AND MEMORANDUM OF**
19  This Document Relates To:              **POINTS AND AUTHORITIES IN**
                                           **SUPPORT OF FINAL APPROVAL OF**
20      All Actions.                       **SETTLEMENT AND PLAN OF**
                                           **ALLOCATION**
21

22
                                           Date:  June 19, 2009
23                                         Time:  10:00 A.M.
                                           Dept.:  Courtroom 8, 19th Floor
24                                         Judge:  Honorable Charles R. Breyer

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) ...................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 3

I.     PRELIMINARY STATEMENT ................................................................ 3

II.    HISTORY AND BACKGROUND OF THE ACTION ........................................ 5

III.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS ........ 6

     A.    THE LAW FAVORS AND ENCOURAGES SETTLEMENTS ................................. 6

     B.    THE NINTH CIRCUIT'S STANDARDS GOVERNING CLASS ACTION SETTLEMENTS ........................................ 7

     C.    AN ANALYSIS OF THE NINTH CIRCUIT'S CRITERIA FOR APPROVAL SUPPORTS APPROVAL OF THE SETTLEMENT ................................. 7

         1.    THE AMOUNT OFFERED IN SETTLEMENT ................................. 7

         2.    THE REACTION OF THE CLASS TO THE PROPOSED SETTLEMENT ................................. 9

         3.    THE STRENGTH OF PLAINTIFFS' CASE ........................................... 10

             a.    RISKS OF PROVING LIABILITY ........................................... 10

             b.    RISKS OF PROVING DAMAGES ........................................... 11

         4.    THE RISK, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF THE LITIGATION ....................................... 12

         5.    THE EXTENT OF DISCOVERY COMPLETED AND THE STAGE OF THE PROCEEDINGS ....................................... 14

         6.    THE EXPERIENCE AND VIEWS OF COUNSEL ................................... 15

         7.    RISKS OF MAINTAINING THE CLASS ACTION THROUGH TRIAL ...... 15

         8.    ABSENCE OF FRAUD OR COLLUSION SUPPORTS THE SETTLEMENT ................................. 16

IV.   CERTIFICATION OF THE CLASS IS PROPER ............................................................. 17

     A.   NUMEROSITY, COMMONALITY, AND TYPICALITY ....................................... 17

     B.   ADEQUACY OF REPRESENTATION................................................................. 18

     C.   PREDOMINANCE OF COMMON ISSUES AND SUPERIORITY ........................... 18

V.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE ..................... 19

VI.   CONCLUSION   ..................................................................................................... 21

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Master File No. C-05-0882-CRB

ii

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods. v. Windsor*,
    521 U.S. 591, 117 S. Ct. 2231 (1997) ............................................................. 17, 18

*Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*,
    89 F. 3d 1399 (9th Cir. 1996), *cert denied*, 520 U.S. 1103 (1997) ........................ 10

*In re Applied Micro Circuits Corp. Secs. Litig.*,
    Civ. No. 01CV0649 K (AJB),
    2003 U.S. Dist. LEXIS 14492 (S.D. Cal. July 10, 2003).................................... 17

*In re Aremisoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002) ............................................................................ 12

*In re Broadcom Corp. Sec. Litig.*,
    Case No. SACV 01-275 DT (MLGx),
    2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sept. 12, 2005).................................... 20

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992)......................................................................... 6, 19

*In re Emulex Corp.*,
    210 F.R.D. 717 (C.D. Cal. 2002) ...................................................................... 18

*Epstein v. MCA, Inc.*,
    50 F.3d 644, 668 (9th Cir. 1995)....................................................................... 18

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    MDL Docket No. 901,
    1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ................................... 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998).......................................................................... 6, 7

*In re Harmonic, Inc. Sec. Litig.*,
    163 F. Supp. 2d 1079 (N.D. Cal. 2001) ............................................................. 10

*In re Heritage Bond Litig.*,
    MDL Case No. 02-1475DT,
    2005 U.S. Dist LEXIS 13555 (C.D. Cal. June 10, 2005) ........................ 14, 18, 19

*In re Heritgage Bond Litig.*,
    MDL Case No. 02-ML-1475DT,
    2004 U.S. Dist. LEXIS 15386 (C.D. Cal. July 12, 2004) ................................... 19

*Hughes v. Microsoft Corp.*,
   No. C98-1646C,
   2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 21, 2001) ...................................................... 9

*In re Immune Response Secs. Litig.*,
   Case No. 01CV1237 J (WMc),
   2007 U.S. Dist. LEXIS 40017 (S.D. Cal. May 31, 2007) ...................................................... 16

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) ...................................................... 15

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973) ...................................................... 12

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998)...................................................... 7

*Lopez v. San Francisco Unified Sch. Dist.*,
   No. C 99-3260 SI (EMC),
   2004 U.S. Dist. LEXIS 21970 (N.D. Cal. Oct. 5, 2004)...................................................... 12

*Madden v. Deloitte & Touche, LLP*,
   118 Fed. Appx. 150 (9th Cir. 2004) ...................................................... 11

*In re Magma Design Automation Secs. Litig.*,
   2007 U.S. Dist. LEXIS 62641 (N.D. Cal. Aug. 16, 2007)...................................................... 17

*Matsushita Elec. Indus. Co., Ltd. v. Epstein*,
   516 U.S. 367, 116 S. Ct. 873 (1996) ...................................................... 18

*McKowan Lowe & Co. v. Jasmine, Ltd.*,
   Nos. 94-5522 (RBK) & 96-2318 (RBK),
   2005 U.S. Dist. LEXIS 32614 (D.N.J. June 30, 2005) ...................................................... 11

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F. 3d 454 (9th Cir. 2000)...................................................... 7, 14

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK),
   2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Jan. 31, 2007)...................................................... 8

*In re Mfrs. Life Ins. Co. Premium Litig.*,
   MDL No. 1109,
   1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 18, 1998)...................................................... 9, 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. Jan. 5, 2004)...................................................... 9, 12, 15

*Officers for Justice v. Civil Service Com.*,
    688 F.2d 615 (9th Cir. 1982).................................................................................. 6, 7, 8, 12

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................. 6, 8, 16

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    176 F.R.D. 158 (E.D. Pa. 1997)............................................................................... 8

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................. 6

*Principe v. Ukropina (In re Pacific Enters. Sec. Litig.)*,
    47 F.3d 373 (9th Cir. 1995)..................................................................................... 6

*Schwartz v. TXU Corp.*,
    Cause No. 3:02-CV-2243-K,
    2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) ....................................... 15

*In re Seagate Tech. II Sec. Litig.*,
    843 F. Supp. 1341 (N.D. Cal. 1994) ....................................................................... 19

*In re Shoretel Inc., Sec. Litig.*,
    No. C 08-00271 CRB,
    2009 U.S. Dist. LEXIS 11151 (N.D. Cal. Feb. 2, 2009)......................................... 9

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003).................................................................................... 7

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814(MP),
    2004 WL 1087261 (S.D.N.Y. May 14, 2004)......................................................... 13

*Torrisi v. Tuscon Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993)..................................................................................... 6, 12

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976).................................................................................... 6

*In re Verisign, Inc. Sec. Litig.*,
    NO. C 02-02270 JW,
    2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ....................................... 17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989),
    *aff'd sub nom.*, *Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............ 15

*Wilkerson v. Martin Marietta Corp.*,
    171 F.R.D. 273 (D. Colo. 1997)............................................................................... 16

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910) ................................................................................................ 6

STATUTES

15 USC § 77k .................................................................................................................. 10

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................ 18

Civil L.R. 7-4(a)(3) .......................................................................................................... 2

OTHER AUTHORITIES

FED. R. CIV. P. 23 ............................................................................................. 1, 16, 17, 18

MANUAL FOR COMPLEX LITIGATION § 30.43 (3d ed. 2002) ............................................ 6

Newberg & Conte, NEWBERG ON CLASS ACTIONS § 11.45 (4th ed. 2002) .................................... 14

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, on June 19, 2009, at 10:00 a.m., before the Honorable Charles R. Breyer, United States District Judge, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, plaintiffs Ngoan Van Le, Richard Beedenbender and Scott Strouse (collectively, the "Le Group" or "Lead Plaintiff") and additional plaintiff Kenneth P. Wachsman (together with the Le Group, the "Plaintiffs"), on behalf of themselves and others similarly situated, will and hereby move pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order (i) granting final approval of the proposed settlement set forth in the Stipulation and Agreement of Settlement dated December 10, 2008 (the "Stipulation")[1] and (ii) granting final approval of the proposed plan for allocating the settlement proceeds to the Class.

This motion is based on the pleadings and matters of record, the accompanying Memorandum of Points and Authorities, the Declaration of Andrew L. Zivitz in Support of Final Approval of Settlement, Plan of Allocation and Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Declaration" or "Decl.") filed herewith; the Stipulation and exhibits thereto, which embody the terms of the agreement between Plaintiffs and Defendants[2] (together, the "Parties"); and such additional evidence or argument as may be presented at the hearing.

---

[1]   All capitalized terms used herein are defined in the Stipulation, which, along with its accompanying exhibits, was submitted to the Court on January 6, 2009. (Docket No. 73).

[2]   Defendants are: (i) Leadis Technology, Inc. ("Leadis" or the "Company"); (ii) Sung Tae "Steve" Ahn, Victor Lee, Keunmyung "Ken" Lee, Lip-Bu Tan, Kenneth Goldman, James Plummer and Arati Prabhaker (the "Individual Defendants"); and (iii) Goldman, Sachs & Co., Merrill Lynch, Pierce, Fenner & Smith, Thomas Weisel Partners LLC and Needham & Company, Inc. (the "Underwriter Defendants" and, together with Leadis and the Individual Defendants, the "Defendants").

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Master File No. C-05-0882-CRB

1

1

**STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))**

2      1.      Whether the Court should grant final approval of the proposed settlement of

3    $4,200,000 with Defendants;

4      2.      Whether the Court should grant final approval of the proposed plan of allocation;

5      3.      Whether the Court should grant final certification of the Class for settlement

6    purposes; and

7      4.      Whether the Court should order the consummation of the proposed settlement

8    subject to its terms.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2     **I.    PRELIMINARY STATEMENT**

3          The proposed Settlement of this Action provides for the payment of four million two

4     hundred thousand dollars ($4,200,000) in cash (the "Settlement Amount"), which amount has

5     been fully funded and is currently earning interest for the Class,[3] in exchange for the dismissal of

6     all claims brought against Defendants.  The Settlement is the culmination of more than three

7     years of hard-fought litigation followed by several months of arm's-length settlement negotiations

8     to reach an agreement in principle and thereafter, to memorialize the agreement, and, for the

9     reasons set forth below, is a substantial benefit for the Class.

10         Since this Action was commenced in March 2005, Plaintiffs have diligently and

11    vigorously pursued their claims against Defendants.  During the course of the Action, Lead

12    Counsel (i) reviewed and analyzed voluminous public documents, including the Company's

13    filings with the United States Securities and Exchange Commission ("SEC"), international wire

14    and press releases published by and regarding Leadis, conference calls and announcements,

15    securities analysts' reports, and trade journals and reports concerning the cellular phone display

16    driver and semiconductor industries; (ii) thoroughly researched the law pertaining to the claims

17    and defenses asserted; (iii) briefed arguments raised in motions to dismiss filed by multiple

18    defendants; (iv) successfully briefed and argued an appeal of this Court's dismissal of the Action;

19    and (v) in connection with settlement, reviewed and analyzed documents produced by Leadis

20    relating to the extent of its business dealings with Samsung OLED Co., LTD ("Samsung OLED")

21    at the time of the IPO and shortly thereafter.  The Settlement was then achieved only after several

22

23    [3]  The Class is defined as all persons and entities who purchased shares of Leadis common stock
      pursuant to, or traceable to, the Company's initial public offering ("IPO") and who were damaged
24    thereby.  Shares of Leadis common stock purchased "pursuant to, or traceable to, the Company's
      IPO" refers to (for purposes of this Settlement only) any share of Leadis common stock initially
25    purchased at the IPO offering price on the date the registration statement was declared effective,
      or any share of Leadis common stock purchased on the open market between June 16, 2004 and
26    March 2, 2005 inclusive.  Excluded from this definition are any "purchases," made on or about
      the date that the Company's IPO registration statement was declared effective, in which Leadis
27    preferred stock was converted to common stock (but, no open-market purchases on or before
      March 2, 2005 are excluded).
28
      PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
      PLAN OF ALLOCATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          3
      **Master File No. C-05-0882-CRB**

weeks of hard-fought telephonic negotiations, with the active involvement of Defendants' insurer, followed by several additional weeks of intense negotiations over the terms of the Settlement.

As discussed further herein and in the Declaration, the Settlement represents a realistic assessment by knowledgeable attorneys, on both sides, in light of the risks of further litigation and the limited insurance proceeds available to fund a settlement or satisfy a verdict against Defendants.  First, at the time the Settlement was reached, Defendants' petition for writ of *certiorari* was pending before the United States Supreme Court, and Plaintiffs faced the possibility that their successful appeal of this Court's dismissal of the Complaint would be reversed.  If upheld, Plaintiffs faced the risks associated with surviving another round of motions to dismiss, as well as establishing Defendants' liability and the full amount of the Class' damages at summary judgment and trial.  Second, the $4.2 million Settlement provides a substantial recovery for the Class -- representing 84% of the Company's available insurance proceeds.[4]  But for the Settlement, the costs associated with litigating this Action through merits discovery, including depositions, expert discovery and summary judgment, would be high, and it is unlikely that any of Defendants' insurance policy would have remained to fund a judgment if the Plaintiffs prevailed at trial.  Thus, Plaintiffs and their counsel have concluded that the Settlement is fair, reasonable and adequate and in the best interests of the Class.

The overwhelmingly positive reaction of the Class also supports the Settlement.  Pursuant to the Court's Order Preliminarily Approving Settlement dated February 4, 2009 (the "Preliminary Approval Order"), a total of 9,984 copies of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Expenses and Fairness Hearing (the "Notice") were mailed to potential Class Members or their nominees.[5]  In addition, a summary notice was published in the national edition of *Investor's Business Daily* and over *PR Newswire* on March 16, 2008.  SCS Aff. ¶6.  The deadline for objecting or requesting exclusion from the

---

[4]  At the time of the Parties' settlement negotiations, Leadis had a single, wasting directors' and officers' insurance policy for $5 million.

[5]  *See* Affidavit of Paul Mulholland, CPA, CVA, submitted on behalf of Strategic Claims Services ("SCS"), the Claims Administrator for this Action (the "SCS Affidavit" or "SCS Aff."), ¶8.  The SCS Affidavit is attached as Exhibit 1 to the Declaration.

1  Class expired on May 29, 2009.  To date, not a single Class Member has objected to any aspect of

2  the Settlement, including the Plan of Allocation, and only one Class Member has requested to be

3  excluded from the Class.  SCS Aff. ¶10.  This complete absence of objections certainly supports

4  Plaintiffs' decision to resolve the Action in exchange for the Settlement Amount and the Court

5  can infer that the Class agrees that the Settlement and Plan of Allocation are fair, reasonable and

6  adequate.  Additionally, the plan for allocating the settlement proceeds is fair, reasonable and

7  adequate and also warrants the Court's final approval.

8  **II.    HISTORY AND BACKGROUND OF THE ACTION**

9         This Action involves alleged misrepresentations and omissions of material fact regarding

10  the Company's organic light-emitting diodes ("OLED") display driver customer base, market

11  conditions and the Company's future business prospects which were made in connection with the

12  Company's IPO in June 2004.[6]  Specifically, Plaintiffs alleged that, at the time of the IPO, sales

13  of the Company's OLED products were already slowing and/or were poised to slow because the

14  parent company of its largest customer, Samsung OLED, had started to manufacture its own

15  OLED technology obviating the need for Samsung OLED to purchase the Company's OLED

16  products.  As a result of the alleged misleading statements and omissions, Plaintiffs asserted that

17  the price of the 6 million shares of Leadis common stock issued in the IPO was artificially

18  inflated.  Decl. ¶¶12, 14.

19         Rather that recite the full background of the Action here, Plaintiffs respectfully refer the

20  Court to the accompanying Declaration for a full discussion of, *inter alia*, the factual and

21  procedural history of the Action, the claims asserted, the investigation and informal discovery

22  undertaken, the settlement negotiations and the Company's weak financial condition at the time

23  the Parties reached the Settlement.  Decl. ¶¶7-26.[7]

24  _____

25  [6]   The "Offering Documents" collectively refer to the Company's Registration Statement filed with the SEC on March 24, 2004, on Form S-1, and as later amended on April 30, 2004, May 20,

26  2004, and June 14, 2004, and a prospectus filed with the SEC on June 14, 2004 on Form 424B.

27  [7]   In addition to the Declaration, Plaintiffs are also simultaneously submitting to the Court the Notice of Motion, Motion and Memorandum of Points and Authorities in Support of Lead

28  Counsel's Application for an Award of Attorneys' Fees and Expenses.  Plaintiffs respectfully

III.   **THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS**

   A.   <u>THE LAW FAVORS AND ENCOURAGES SETTLEMENTS</u>

   The settlement of complex class action litigation is clearly favored by the courts.  *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982).  "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).[8]

   Recognizing that a settlement represents an exercise of judgment by the negotiating parties, *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), the court's inquiry is limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) (quoting *Officers*, 688 F.2d at 625).  Moreover, courts have found a strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations.  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."); *see also* MANUAL FOR COMPLEX LITIGATION §30.43 at 289 (3d ed. 2002).

   This initial presumption of fairness and adequacy applies here because a substantial settlement was reached by experienced, fully-informed counsel after an extensive ongoing investigation, three years of litigation and several weeks of arm's-length settlement discussions.  Thus, little doubt exists that this Settlement is entitled to the presumption of fairness dictated by Ninth Circuit law.  Decl. ¶¶12-21.

---

incorporate those documents herein.

[8]  The law always favors the compromise of disputed claims, *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910), including those claims *asserted* in stockholder class actions.  *See Principe v. Ukropina (In re Pacific Enters. Sec. Litig.)*, 47 F.3d 373, 378 (9th Cir. 1995).

**B. THE NINTH CIRCUIT'S STANDARDS GOVERNING CLASS ACTION SETTLEMENTS**

The standard for reviewing the proposed settlement of a class action in the Ninth Circuit, as in other circuits, is whether the proposed settlement is "fair, reasonable and adequate." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 377 (citation omitted); *Officers*, 688 F.2d at 625. To that end, the Ninth Circuit has identified eight factors to consider in deciding whether to approve a proposed settlement of a class action:

> (1) the amount offered in settlement; (2) the reaction of the class members to the proposed settlement; (3) the strength of plaintiffs' case; (4) the risk, expense, complexity, and likely duration of further litigation; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the risk of maintaining class action status throughout the trial; and (8) the absence of collusion.

*See Officers*, 688 F.2d at 625 (the importance of any one factor "depend[s] upon…the nature of the claim[] advanced, the type[] of relief sought, and the unique facts and circumstances presented by each individual case"). As demonstrated below, an analysis of each of the foregoing factors supports a finding that the Settlement is fair, reasonable and adequate.

**C. AN ANALYSIS OF THE NINTH CIRCUIT'S CRITERIA FOR APPROVAL SUPPORTS APPROVAL OF THE SETTLEMENT**

**1. THE AMOUNT OFFERED IN SETTLEMENT**

In determining whether the amount of a proposed settlement is fair, the Ninth Circuit has suggested that courts compare the settlement amount to the parties' "estimates of the maximum amount of damages recoverable in a successful litigation." *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000). The settlement amount, however, is not to be judged against a hypothetical measure of what may have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *see also Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). "Naturally, the agreement

1   reached normally embodies a compromise; in exchange for the saving of cost and elimination of

2   risk, the parties each give up something they might have won had they proceeded with litigation

3   ..." *Officers*, 688 F.2d at 624 (citation omitted).

4          This Settlement represents an excellent recovery for the Class.  At the time the Settlement

5   was reached, Leadis was in a serious state of financial decline and no immediate turn around was

6   or is likely.  Decl. ¶¶22-24, 30.  Indeed, Leadis common stock was trading at $0.41 a share on the

7   date the Parties signed the Stipulation.  Decl. ¶23.  In addition, there was only $5 million in

8   insurance proceeds available to fund a settlement or satisfy a future verdict against Defendants,

9   and these insurance proceeds were also being used to pay defense costs, further depleting the

10  limited funds available to the Class.  Decl. ¶¶25, 30.  *See In re Orthopedic Bone Screw Prods.*

11  *Liab. Litig.*, 176 F.R.D. 158, 186 (E.D. Pa. 1997) (considering company's asset base and

12  insurance coverage in assessing settlement's reasonableness).  Here, Lead Counsel has obtained a

13  recovery representing 84% of the available insurance, and thus, has concluded that continuing to

14  litigate would not enhance the opportunity to recover a larger sum for Plaintiffs and the Class, and

15  would in fact only place at risk the Class' ability to recover at all.  Decl. ¶30.

16         Even when measuring the recovery of $4,200,000 against the largest potential recovery in

17  the case without reference to the financial condition of the Company -- the Settlement represents

18  approximately 9% of the Class' statutory damages of $45.6 million and certainly warrants

19  approval.  *See Omnivision*, 559 F. Supp. 2d at 1042 (finding settlement resulting in approximately

20  9% of the maximum potential recovery to be "higher than the median percentage of investors

21  losses recovered in recent shareholder class action settlements"); *In re Merrill Lynch & Co.*

22  *Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *33

23  (S.D.N.Y. Jan. 31, 2007) (finding settlement representing recovery of approximately 6.25% of

24  estimated damages to be "at the higher end of the range of reasonableness of recovery in class

25  action securities litigations").  Furthermore, without denigrating Plaintiffs' case, Lead Counsel is

26  certain that Defendants would have argued and a jury may have found that Plaintiffs' damages

27  were significantly less than the statutory maximum of $45.6 million.  In this respect, it is no

28  secret that Section 11 provides Defendants with a negative causation defense, which provides that

1    Defendants are liable only for a portion of statutory damages caused by the alleged misstatements

2    and omissions.  *See, e.g., In re Shoretel Inc., Sec. Litig.*, No. C 08-00271 CRB, 2009 U.S. Dist.

3    LEXIS 11151, at *16-18 (N.D. Cal. Feb. 2, 2009).  Were Defendants successful in proving this

4    defense, Section 11 damages could have fallen by tens of millions of dollars.  For example, if

5    Defendants were successful in arguing that the only damages attributable to the alleged

6    misstatements and omissions in the Offering Documents[9] were limited to the stock drop

7    associated with the January 10, 2005 announcement, thereby proving negative causation with

8    respect to all other stock drops, remaining Section 11 damages would have ***totaled*** $4.5 million.

9    Decl. ¶31.   Accordingly, Plaintiffs submit that this factor weighs heavily in favor of the

10   Settlement.

11              **2.    THE REACTION OF THE CLASS TO THE PROPOSED SETTLEMENT**

12            The class' reaction to a proposed settlement is a significant factor in assessing its fairness

13   and adequacy.  *See Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at

14   *24 (W.D. Wash. Mar. 21, 2001) (finding 9 objections and exclusions by only 1% of class

15   indicated class approval and supported settlement).  Indeed, "it is established that the absence of a

16   large number of objections to a proposed class action settlement raises a strong presumption that

17   the terms of a proposed class settlement are favorable to the class members."   *Nat'l Rural*

18   *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. Jan. 5, 2004).

19            Here, 9,984 copies of the Notice have been mailed to potential members of the Class.

20   SCS Aff. ¶8.  As of the May 29, 2009 deadline for filing objections and/or requests for exclusion,

21   ***not one recipient of the Notice has objected to any aspect of the Settlement***.  Decl. ¶32.  *See In*

22   *re Mfrs. Life Ins. Co. Premium Litig.*, MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at *24 (S.D.

23   Cal. Dec. 18, 1998) ("[A] minuscule number of objectors is another factor favoring approval.").

24   In addition, only one Class Member has requested exclusion from the Class.  *See* SCS Aff. ¶10.

25   This lack of dissent and exclusions clearly supports the Court's final approval of the Settlement.

26

27   [9]   The "Offering Documents" collectively refer to the Company's Registration Statement filed
      with the SEC on March 24, 2004, on Form S-1, and as later amended on April 30, 2004, May 20,
28   2004, and June 14, 2004, and a prospectus filed with the SEC on June 14, 2004 on Form 424B.

### 3.   THE STRENGTH OF PLAINTIFFS' CASE

While Lead Counsel believes that Defendants' *certiorari* petition would have been denied by the United States Supreme Court and that Plaintiffs' claims, on remand, would have been sustained, Lead Counsel recognizes that ultimate success against Defendants at summary judgment or trial is not ensured. In determining the Settlement's fairness, Lead Counsel heavily considered and analyzed potential risks to continued litigation, and in light of such risks, believes the Settlement is in the best interests of the Class and has recommended the Settlement to Plaintiffs for final presentation to the Court. Decl. ¶33.

### a.   RISKS OF PROVING LIABILITY

In order to prevail on their Securities Act claims, Plaintiffs would be required to prove (i) that the Offering Documents in connection with the Company's IPO contained an omission or misrepresentation, and (ii) that the omission or misrepresentation was material, in that it would have mislead a reasonable investor about the nature of his or her investment. *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F. 3d 1399, 1403-04 (9th Cir. 1996), *cert denied*, 520 U.S. 1103 (1997) (citation omitted); *In re Harmonic, Inc. Sec. Litig.*, 163 F. Supp. 2d 1079, 1085 (N.D. Cal. 2001). *See also* 15 USC §77k. In their motions to dismiss, briefing on appeal and settlement negotiations, Defendants consistently asserted, among others, the following defenses to Plaintiffs' claims: (i) the Offering Documents did not contain any actionable misrepresentations or omissions; (ii) the Offering Documents contained sufficient cautionary statements and numerous risk disclosures, adequately warning investors of the risks associated with the Company's industry, its competitors, the potential consolidation in the market and the risk of reduction in orders of the Company's OLED products, and therefore could not form the basis of liability under the Securities Act; (iii) the statements challenged by Plaintiffs were immaterial "puffing" upon which reasonable investors know not to rely; and (iv) Plaintiffs would not be able to overcome Defendants' negative causation defense and, with respect to the Underwriter Defendants, their due diligence defense.[10] Decl. ¶¶34-35.

---

[10] While the Company is strictly liable for any material misstatements or omissions under Section 11, the statute provides the Underwriter Defendants with a "due diligence" defense to liability.

1    Had the Settlement not been reached, Plaintiffs would expect Defendants to build

2    foundations for each of these defenses, and others, and to assert each of them at class

3    certification, summary judgment, trial and on appeal.  In fact, Defendants produced several

4    documents in connection with the Settlement which could be construed by a jury to support

5    Defendants' contention that certain statements were not materially false and misleading.  Thus,

6    the risk that Defendants were building defenses that could significantly affect Plaintiffs' ability to

7    recover was tangible and not just hypothetical.  Decl. ¶36.  *See Mfrs. Life Ins.*, 1998 U.S. Dist.

8    LEXIS 23217, at *16 ("even if it is assumed that a successful outcome for plaintiffs at summary

9    judgment or at trial would yield a greater recovery than the Settlement -- which is not at all

10   apparent -- there is easily enough uncertainty in the mix to support settling the dispute rather than

11   risking no recovery in future proceedings") (citation omitted).

### b.    RISKS OF PROVING DAMAGES

13   Even if Plaintiffs succeeded in overcoming each and every defense the Defendants could

14   raise with respect to liability, Plaintiffs also were mindful that they would be required to make

15   certain showings concerning damages and overcoming or rebutting Defendants' inevitable

16   negative causation defense.  With respect to loss causation, Plaintiffs would need to counter

17   Defendants' argument that Plaintiffs' damages were not caused by the alleged misstatements and

18   omissions.  Defendants likely would have asserted that the stock drops at issue in this Action

19   were caused, at least in part, by unrelated events, rather than any alleged misrepresentations or

20   omission of material fact contained in the Offering Documents.  Decl. ¶37.  *See, e.g., Madden v.*

21   *Deloitte & Touche, LLP*, 118 Fed. Appx. 150, 154 (9th Cir. 2004) (upholding a summary

22   judgment decision in favor of defendants due to undisputed evidence establishing a loss-causation

23   defense); *McKowan Lowe & Co. v. Jasmine, Ltd.*, Nos. 94-5522 (RBK) & 96-2318 (RBK), 2005

24   U.S. Dist. LEXIS 32164, at *36-*37 (D.N.J. June 30, 2005) (finding that where defendants

25   _____

*See* 15 U.S.C. §77k(b).  For example and without denigrating Plaintiffs' case, if the Underwriter

26   Defendants were successful in convincing a jury that they could not have discovered, through the exercise of reasonable diligence, that Samsung OLED was receiving or was set to receive its

27   OLED display drivers from its parent company instead of Leadis, Plaintiffs' chances of recovering anything beyond the instant recovery would have decreased dramatically, if not,

28   disappeared altogether.

1  adduced proof that the alleged misrepresentations did not cause plaintiffs' losses, defendants were

2  entitled to summary judgment on plaintiffs' Section 11 claim).

3          Although Plaintiffs would present expert testimony on the issues of loss causation and

4  damages, one cannot predict how a jury will weigh competing experts' testimony, and the crucial

5  element of damages would likely be reduced at trial to a "battle of the experts." *See Mfrs. Life*

6  *Ins.*, 1998 U.S. Dist. LEXIS 23217, at *17 ("[F]urther litigation in this case, as in many class

7  actions, would in all probability be complicated, lengthy, expensive, and hard fought.  At a trial,

8  there would likely be a battle of experts on myriad complex factual questions . . ."); *Lopez v. San*

9  *Francisco Unified Sch. Dist.*, No. C 99-3260 SI (EMC), 2004 U.S. Dist. LEXIS 21970, at *14

10  (N.D. Cal. Oct. 5, 2004) (quoting *In re Aremisoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J.

11  2002) ("Regardless of the strength of case counsel might present at trial, victory in litigation is

12  never guaranteed.").  Lead Counsel has sufficient experience to recognize that in such a battle

13  there exists the substantial possibility that a trier of fact could be swayed by Defendants' experts,

14  who would seek to minimize or eliminate the amount of Plaintiffs' losses by showing that any

15  losses were attributable to factors other than the alleged misstatements and omissions.  Decl. ¶38.

16  Thus, the uncertainties concerning liability, causation and damages strongly support approval of

17  the Settlement.

18      **4.  THE RISK, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF**

19              **THE LITIGATION**

20          Courts have consistently recognized that the risk, expense, complexity, and possible

21  duration of the litigation are critical factors in evaluating the reasonableness of a settlement.

22  *Torrisi*, 8 F.3d at 1376 (". . .[T]he cost, complexity and time of fully litigating the case all suggest

23  that this settlement was fair."); *Officers*, 688 F.2d at 626 (expense and possible duration of

24  litigation are major factors to consider in evaluating reasonableness of settlement).  In fact, "[i]n

25  most situations, unless the settlement is clearly inadequate, its acceptance and approval are

26  preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms.*,

27  221 F.R.D. at 526 (finding that even though the proposed settlement was reached on eve of trial,

28  this factor supported approval because trial would be lengthy, involve significant number of lay

1    witnesses and experts, present complex issues, and appeal would have followed) (citations

2    omitted).  *See also Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (noting that

3    "stockholder litigation is notably difficult and notoriously uncertain").

4           Here, Plaintiffs not only faced risks associated with establishing liability, causation and

5    damages if this Action continued, but also faced risks associated with litigating against a

6    company with declining resources and limited insurance coverage.  Plaintiffs' claims involved

7    numerous complex legal, financial and factual issues that would have required Plaintiffs to

8    conduct voluminous document discovery, take numerous depositions and engage in extensive

9    expert discovery.  In addition, given the location of the Company's operations in China, Japan,

10   South Korea and Taiwan, Plaintiffs likely would have encountered the additional complexities

11   associated with obtaining discovery from witnesses located outside the United States.  Decl. ¶39.

12   *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3

13   (S.D.N.Y. May 14, 2004) (noting difficulty of actions where witnesses and documents are located

14   abroad, beyond the court's subpoena power).

15          The expense and delay of further litigation also counsel in favor of the Settlement.  If

16   Defendants' *certiorari* petition was denied and the Action remanded back to this Court for further

17   proceedings, there would be another round of motions to dismiss before the Parties would even

18   begin the formal discovery process.  Given the complex nature of the issues involved in this

19   Action, Lead Counsel would anticipate reviewing hundreds of thousands of pages of documents

20   and taking many depositions, including depositions of third parties located throughout the world.

21   Following the close of merits discovery, the Parties would engage in expert discovery -- often the

22   most costly phase of complex litigation -- which likely would require each side to retain

23   accounting and damage experts, as well as experts in the OLED driver industry.  The costs

24   associated with a second round of motions to dismiss and discovery, not to mention the costs

25   associated with summary judgment, including *Daubert* motions, preparation for trial, a trial, and

26   the inevitable appeals, would be high.  These additional expenses also would have been borne by

27   Defendants, diminishing their already limited insurance proceeds.  One can easily conclude that

28   this Action, if taken to trial, would require additional years to conclude, necessitating many hours

of the Court's time and resources.  As a result, years would pass before the Class would receive a recovery, if any.  Decl. ¶40.  *In re Heritage Bond Litig.*, MDL Case No. 02-ML-1475DT, 2005 U.S. Dist. LEXIS 13555, at *28 (C.D. Cal. June 10, 2005) ("much of the value of a settlement lies in the ability to make funds available promptly") (citation omitted).

### 5.   THE EXTENT OF DISCOVERY COMPLETED AND THE STAGE OF THE PROCEEDINGS

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation."  Newberg & Conte, NEWBERG ON CLASS ACTIONS § 11.45 (4th ed. 2002). Moreover, "'in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.'"  *Mego Fin. Corp.*, 213 F.3d at 459 (quoting *Linney*, 151 F.3d at 1239).

By the time the Parties reached the Settlement, Lead Counsel had sufficient knowledge and understanding of the merits of the claims alleged in the Action and the defenses that would be asserted by Defendants to determine that the Settlement is fair, reasonable and adequate.  Lead Counsel obtained its knowledge and expanded its theories of liability through drafting a detailed amended complaint; investigating and researching the facts and issues required to craft the Complaint; fully briefing and arguing issues raised in motions to dismiss filed by two separate sets of defendants; and fully briefing and winning an appeal of this Court's dismissal of the Complaint.  Lead Counsel then used the information at its disposal to participate in several months of hard-fought settlement negotiations with Defendants.  The knowledge and insight gained by Lead Counsel over the course of more than three years of active litigation and settlement negotiations, provided Lead Counsel with sufficient information to evaluate the strengths and weaknesses of the Class' claims and Defendants' defenses, as well as the likelihood of obtaining a larger recovery from the Defendants had the Action continued, and guided Lead Counsel in its recommendation of the Settlement to Plaintiffs.  Decl. ¶41.  Therefore, the Court

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Master File No. C-05-0882-CRB

14

1   should find that an analysis of this factor favors approval of the Settlement.

2                    **6.    THE EXPERIENCE AND VIEWS OF COUNSEL**

3          "Great weight is accorded to the recommendation of counsel, who are most closely

4   acquainted with the facts of the underlying litigation…Thus, "'the trial judge, absent fraud,

5   collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"

6   *Nat'l Rural Telecomms*, 221 F.R.D. at 528 (citations omitted); *see also In re First Capital*

7   *Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at

8   *8 (C.D. Cal. June 10, 1992) (finding counsels' belief that the proposed settlement represented the

9   most beneficial result for the class to be a compelling factor the court's approval); *In re*

10  *Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989), *aff'd sub*

11  *nom., Class Plaintiffs*, 955 F.2d 1268.

12         Lead Counsel, BTKMC, is an accomplished plaintiffs' class action firm.   *See* firm

13  biography for BTKMC attached to the Declaration as Exhibit 2.  As set forth above, Lead Counsel

14  has become knowledgeable of all the circumstances at issue in this Action.  Lead Counsel has

15  prosecuted Plaintiffs' claims against Defendants for over three years, including a successful

16  appeal to the Ninth Circuit Court of Appeals.  In light of the risks involved in further litigation,

17  including surviving another round of motions to dismiss and litigating against a corporate

18  defendant with declining financial resources and only $5 million in insurance, Lead Counsel and

19  Plaintiffs believe the Settlement is in the best interests of the Class.  Decl. ¶42.  *See Kirkorian v.*

20  *Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ("The recommendation of experienced counsel

21  carries significant weight in the court's determination of the reasonableness of the settlement.");

22  *see also Schwartz v. TXU Corp.*, Cause No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at

23  *72 (N.D. Tex. Nov. 8, 2005) ("[W]here the parties have conducted an extensive investigation,

24  engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation,

25  courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength

26  of his case.'") (internal citation omitted).

27                   **7.    RISKS OF MAINTAINING THE CLASS ACTION THROUGH TRIAL**

28         The Class as pled in this Action has been certified only for settlement purposes.  But for

1   the Settlement, Defendants likely would have contested certification of the Class and challenged

2   Plaintiffs' appointment as class representatives.  Even if certified, Defendants likely would have

3   taken any opportunity to argue for decertification as the Action progressed.  Further, there is no

4   assurance of maintaining certification of a class, as courts may exercise their discretion to re-

5   evaluate the appropriateness of class certification at any time.  Decl. ¶43.  *See Omnivision*, 559 F.

6   Supp. 2d at 1041 (noting that even if a class is certified, "there is no guarantee the certification

7   would survive through trial, as Defendants might have sought decertification or modification of

8   the class").  Thus, the Settlement avoids any uncertainty with respect to this issue.

9           **8.**      **ABSENCE OF FRAUD OR COLLUSION SUPPORTS THE SETTLEMENT**

10       As discussed above, the Parties engaged in several weeks of arm's-length settlement

11  negotiations prior to reaching a tentative agreement to settle the Action, followed by additional

12  weeks of intense debate over the terms of the Settlement.  Defendants' insurers also were actively

13  involved in these negotiations.  At all times during the negotiations, Lead Counsel zealously

14  advocated Plaintiffs' position, with the best interests of the Class at the forefront of these

15  negotiations.   Counsel for Defendants advanced Defendants' position throughout these

16  negotiations with equal vigor.  But for the Settlement -- an agreement that Lead Counsel believes

17  to be in the best interests of the Class in light of the strengths of Plaintiffs' claims -- Lead Counsel

18  was prepared to continue prosecuting the Action against Defendants.  Decl. ¶44.  *See In re*

19  *Immune Response Secs. Litig.*, Case No. 01CV1237 J (WMc), 2007 U.S. Dist. LEXIS 40017, at

20  *20 (S.D. Cal. May 31, 2007) (finding settlement involved neither fraud nor collusion where it

21  was product of arm's length negotiations and hard-fought litigation by experienced counsel on

22  both sides); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997) (finding

23  the settlement negotiations to be fair, honest and at arm's-length where the parties to the litigation

24  "vigorously advocated their respective positions throughout the pendency of the case").

25       Therefore, Lead Counsel respectfully submits that the analyses of all of the factors utilized

26  in evaluating a settlement in the Ninth Circuit, as set forth above, demonstrate that the Settlement

27  is fair, reasonable and adequate and supports Court approval.

28

1     **IV.**    **CERTIFICATION OF THE CLASS IS PROPER**

2         In *Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997), the Supreme Court

3 held that a class seeking certification for settlement purposes must satisfy the applicable

4 requirements of Rule 23, *i.e.*, numerosity, commonality, typicality, adequacy of representation,

5 predominance of common issues, and superiority. *See In re Magma Design Automation Secs.*

6 *Litig.*, 2007 U.S. Dist. LEXIS 62641, at *2-4 (N.D. Cal. Aug. 16, 2007) ("As in almost all

7 lawsuits by shareholders of public companies, the investors […] easily satisfy the requirements of

8 Rule 23."). This Court certified the proposed Class in its Preliminary Approval Order, and

9 Plaintiffs now seek final certification of the Class for purposes of settlement. As detailed below,

10 the proposed Class satisfies each of the requirements of Rules 23(a) and 23(b)(3).

11       **A.**    **NUMEROSITY, COMMONALITY, AND TYPICALITY**

12         The Class meets the numerosity, commonality, and typicality standards. Nearly 10,000

13 copies of the Notice were sent to potential Class Members who purchased Leadis common stock

14 pursuant to, or traceable to, the Company's IPO. *See In re Verisign, Inc. Sec. Litig.*, NO. C 02-

15 02270 JW, 2005 U.S. Dist. LEXIS 10438, at *12 (N.D. Cal. Jan. 13, 2005) ("In cases involving

16 securities traded on national stock exchanges, numerosity is practically a given."). Moreover,

17 there are substantial questions of law and fact common to all Class Members (*e.g.*, whether the

18 Offering Documents omitted and/or misrepresented material facts and whether Defendants

19 breached any duty to convey material facts or to correct material facts previously disseminated).

20 In *Amchem*, 521 U.S. at 625, the Supreme Court noted that the common issues test is readily met

21 in securities fraud cases. *See also In re Applied Micro Circuits Corp. Secs. Litig.*, Civ. No.

22 01CV0649 K (AJB), 2003 U.S. Dist. LEXIS 14492, at *8-9 (S.D. Cal. July 10, 2003)

23 (commonality found that every class member acquired securities that were artificially inflated by

24 the defendants' false statements and wrongful conduct during the Class Period). Further, the

25 class representatives' claims are "typical" of other Class Members' claims because they

26 purchased Leadis common stock pursuant to, or traceable to, the Company's IPO at artificially

27 inflated prices and thus have alleged damages similar to other Class Members. Decl. ¶¶46-48.

28

1  *See In re Emulex Corp.*, 210 F.R.D. 717, 719 (C.D. Cal. 2002) (finding typicality where plaintiffs

2  alleged that defendants committed the same acts, in the same manner against all class members).

3  **B.   ADEQUACY OF REPRESENTATION**

4  The adequacy requirement of Rule 23(a)(4) requires Plaintiffs to demonstrate that: (1) the

5  attorney representing the class is qualified and competent; and (2) the class representatives are not

6  disqualified by interests antagonistic to the remainder of the class." *Id.* at 19-20. Here, Plaintiffs

7  have retained highly competent counsel with extensive experience litigating complex securities

8  class actions, which this Court has already approved. *See* firm biography of BTKMC attached to

9  the Declaration as Exhibit 2. In addition, this Court has already designated three of the four

10 proposed class representatives as Lead Plaintiffs pursuant to the Private Securities Litigation

11 Reform Act of 1995 ("PSLRA"), which provides that the Court "shall appoint as lead plaintiff the

12 member or members of the plaintiff class that the court determines to be most capable of

13 adequately representing the interest of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Decl. ¶49.

14 Thus, Plaintiffs and Lead Counsel meet the adequacy requirements of Rule 23.

15 **C.   PREDOMINANCE OF COMMON ISSUES AND SUPERIORITY**

16 Certification of a class under Rule 23(b)(3) requires that common issues predominate over

17 individual issues and that the class action mechanism is superior to other methods of adjudicating

18 the controversy. *Emulex Corp.*, 210 F.R.D. at 720 (citing *Epstein v. MCA, Inc.*, 50 F.3d 644, 668

19 (9th Cir. 1995) (finding securities fraud claims based on misstatements leading to identical claims

20 by numerous shareholders fit Rule 23 requirements "like a glove"), *rev'd on other grounds*

21 *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 116 S. Ct. 873 (1996)). In this

22 Action, both of these requirements are satisfied. First, in order to satisfy the predominance

23 requirement, it must be shown that the issues subject to generalized proof predominate over the

24 issues subject to only individualized proof. *In re Heritage Bond Litig.*, MDL Case No. 02-ML-

25 1475 DT, 2004 U.S. Dist. LEXIS 15386, at *29 (C.D. Cal. July 12, 2004) (noting that

26 predominance requirement generally satisfied in securities actions). As the Supreme Court

27 recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer

28 or securities fraud or violations of the antitrust laws." 521 U.S. at 625. Here, the issues of

liability and damages are common to all class members and clearly predominate over any individual issues.  Second, resolution of this Action through a class action is far superior to litigating hundreds or thousands of individual claims where the expense for a single investor in pursuing a separate action would likely exceed the individual's loss in Leadis common stock. Decl. ¶50.  *See Heritage Bond*, 2004 U.S. Dist. LEXIS 15386, at *36 ("In securities cases, courts have concluded that 'any doubts should be resolved in favor of allowing a class action.'") (citing *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1350 (N.D. Cal. 1994) (class action offers plaintiffs with small claims chance to obtain redress through aggregation – given the fact that the damages a single plaintiff suffers is usually too small to justify litigation)).

In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, the Court should grant final certification of this Class for settlement purposes.

## V.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

The Settlement Fund will be used first to pay: (i) any taxes owed by the Settlement Fund; (ii) all administrative costs, including the costs of notice and claims processing; and (iii) any attorneys' fees, expenses and interest as awarded by the Court.  Upon approval of the Settlement and entry of an order approving distribution, the Net Settlement Fund shall be distributed to Class Members who are not otherwise excluded from the Class and who timely submit valid Proof of Claim and Release forms ("Proofs of Claim") to the Claims Administrator ("Authorized Claimants").[11]  The Plan of Allocation (the "Plan") sets forth the manner in which the Net Settlement Fund shall be distributed to Authorized Claimants.  Decl. ¶51.

The Court has broad discretion in approving the Plan.  *See Class Plaintiffs*, 955 F.2d at 1284.  The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole -- the plan must be fair, reasonable and adequate.  *Id*.  However, an allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel.  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *38.  Here, Lead

---

[11]  "Authorized Claimant" is defined in the Stipulation as a Class Member who submits a timely and valid Proof of Claim to the Claims Administrator.

1  Counsel prepared the Plan after careful consideration and analysis without reference to any

2  particular trading patterns of any of the Lead or Named Plaintiffs.  Decl. ¶51.

3      The Plan developed in this Action provides for distribution to Class Members who have a

4  net loss on all transactions in Leadis common stock purchased pursuant to, or traceable to, the

5  Company's IPO.  The Plan reflects that the price of Leadis common stock was artificially inflated

6  at the time of the Company's June 2004 IPO and that the inflation was fully dissipated when this

7  Action was filed on March 2, 2005.  The amount of each Class Member's claim will be calculated

8  by subtracting the sales price of shares sold prior to the initial complaint being filed from the

9  purchase price of such shares (with the purchase price not to exceed the IPO price of $14.00 per

10 share).[12]  The Plan is not a formalized damage study as it does not countenance any of

11 Defendants' negative loss causation arguments, but rather, it is a simplified methodology based

12 upon statutory damage calculations which is designed solely to compare one Class Member to

13 another through their respective transactions in Leadis common stock purchased pursuant to, or

14 traceable to, the Company's IPO.  Decl. ¶52.  Overall, if the total recognized losses for all

15 Authorized Claimants exceeds the Net Settlement Fund, each Authorized Claimants' share of the

16 Net Settlement Fund will be determined based upon the percentage that his, her or its recognized

17 loss bears to the total recognized losses for all Authorized Claimants.  *See also In re Broadcom*

18 *Corp. Sec. Litig.*, Case No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976, at *17

19 (C.D. Cal. Sept. 12, 2005) (approving plan of allocation where the allocation was pro rata across

20 the Class).

21     The Plan was fully disclosed in the Notice that was sent to nearly 10,000 potential Class

22 Members, and not a single Class Member has filed an objection to the Plan.  *See* SCS Aff. ¶8.

23 Accordingly, Lead Counsel believes that this method of allocation is fair, reasonable and

24 adequate and that the Plan should be approved.

25

26 [12]  For shares of Leadis common stock purchased pursuant to, or traceable to, the IPO which were
27 still held on the date the suit was brought, March 2, 2005, the Plan assumes that the value of such
    shares is the closing price of Leadis common stock on March 2, 2005, or $6.53 per share.
28

1   **VI.    CONCLUSION**

2          For the foregoing reasons, Plaintiffs and Lead Counsel respectfully submit that the

3   Settlement and Plan of Allocation are fair, reasonable, and adequate, and respectfully request this

4   Court to grant final approval of the Settlement and Plan of Allocation.

5   Dated June 12, 2009                              Respectfully submitted,

6                                                    **GREEN WELLING LLP**

7

8                                          _____/s/_____

9                                          Robert S. Green (State Bar No. 136183)
                                           595 Market Street, Suite 2750
10                                         San Francisco, CA  94105
                                           Telephone: (415) 477-6700
11                                         Facsimile:  (415) 477-6710
                                           cand.uscourts@classcounsel.com
12

13                                         *Liaison Counsel for Plaintiffs and the Class*

14                                         Andrew L. Zivitz (*Admitted pro hac vice*)
                                           Christopher L. Nelson
15                                         Michelle Newcomer (*Admitted pro hac vice*)
                                           **BARROWAY TOPAZ KESSLER**
16                                         **MELTZER & CHECK, LLP**
                                           280 King of Prussia Road
17                                         Radnor, PA 19087
                                           Telephone: (610) 667-7706
18                                         Facsimile:  (610) 667-7056
                                           azivitz@btkmc.com
19                                         cnelson@btkmc.com
                                           mnewcomer@btkmc.com
20
                                           *Lead Counsel for Plaintiffs and the Class*
21

22

23

24

25

26

27

28